<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                                              )
INTERNATIONAL DEVELOPMENT LLC,        )
                                                              )
                          Plaintiff,                 )
                                                              )
v.                                                            )          Civil Action No. 09-2495 (GEB)
                                                              )
SIMON NICHOLAS RICHMOND and         )
ADVENTIVE IDEAS, LLC,                        )          **MEMORANDUM OPINION**
                                                              )
                                                              )
                          Defendants.             )
_____ )

<u>**BROWN, Chief Judge**</u>

        This matter comes before the Court on Plaintiff's motion for summary judgment to

declare that certain claims of Defendants' two patents are invalid.  (Doc. No. 89).   Defendants

submitted an opposition to the motion and Plaintiff replied.  (Doc. Nos. 104, 106).  The Court

has considered all of the parties' submissions and decided the motion without oral argument

pursuant to Federal Rule of Civil Procedure 78.   For the reasons set forth below, Plaintiff's

motion is denied.

**I.        BACKGROUND**

        This is a declaratory judgment action for non-infringement and invalidity of patents

directed to solar powered garden lamps that can produce a variety of colors.  (Compl. at ¶4; Doc.

No. 1.)  Defendant, Simon Richmond, is the inventor of the two patents at issue in this case, U.S.

Patent Numbers 7,196,477 ("the '477 patent") and 7,429,827 ("the '827 patent).  The patents are

both titled "Solar Powered Light Assembly to Produce Light of Varying Colors."  ('477 patent,

'827 patent, Title).   The '827 patent is a continuation in part (CIP) of the '477 patent, meaning

that the '827 patent's specification adds to the disclosure of the '477 patent but includes all of the

disclosure of the '477 patent.  (*See* '477 and '827 patents, Specification).   The primary

differences between the two specifications are that the claim language in the '827 patent is

presented in the specification as well and there is one page of additional figures and their

accompanying description (Fig. 11-13) depicting a "modification" that includes a spherical lens.

(*See* '827 patent, 8:25-9:9.)

This action began when Defendants threatened some of Plaintiff's customers with suit.

Plaintiff International Development ("IDC") distributes a variety of solar garden lamps to

customers, including to QVC, Inc.  (Compl. at ¶7; Doc. No. 1).  Defendant Richmond, as

president and sole owner of Adventive Ideas, contacted International Development's customer

QVC and accused it of infringing his patents.  (*Id.* at ¶8-11; Pls.' R. 56.1 at ¶4; Defs.' R. 56.1 at

¶4).   In order to resolve the dispute, IDC brought this declaratory judgment action against

Defendants for non-infringement and for invalidity of Richmond's patents.  (Compl. at ¶4; Doc.

No. 1).

After conducting discovery and participating in a *Markman* hearing, IDC filed this

motion for summary judgment that the claims of Richmond's patents are invalid because they are

anticipated or would have been obvious to one of ordinary skill in the art.


II.    DISCUSSION

A.    Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, a court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987). However, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." *Matsushita*, 475 U.S. at 586.

**B.  Application**

IDC argues that claims 1-9, 13-16, 20-22, and 26 of the '477 patent and claims 27, 32, and 35 of the '827 patent are anticipated by several of IDC's own products, referred to as the "Four Season Solar Lights," which were on sale more than one year prior to the application date. (Pl's. Br. at 9-21); *See* 35 U.S.C. § 102(b). The Court disagrees because there is a material fact as to whether the Four Seasons lamps could create the "varying color" limitation that is present in all of the claims. The Court addresses this issue first. IDC also contends that claims in the

3

'827 patent, claims 28-31, 33, and 34, are obvious based on the combination of the Four Seasons lamps in view of the Piepgras patent publication.  The Court also finds that there is a material fact as to obviousness because there is evidence of secondary considerations of nonobviousness. The Court addresses this issue after the anticipation analysis.

### 1.    *Anticipation Standard*

To anticipate the claims of a patent, and thereby render them invalid, a single prior art reference must include each and every limitation of the claim.  *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir. 2003); *see also* 35 U.S.C. § 102.  Anticipation is a question of fact, including the determination of whether an element is inherent in the prior art. *Eli Lilly & Co. v. Zenith Goldline Pharms., Inc.*, 471 F.3d 1369, 1375 (Fed. Cir. 2006). However, anticipation "may be decided on summary judgment if the record reveals no genuine dispute of material fact."  *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1321 (Fed. Cir. 2008).   A prior art reference can inherently anticipate a patent, if a person of skill in the art would understand the limitations are implicitly disclosed.  *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1347 (Fed. Cir. 2000).

Patents are presumed valid and as a result "[a]nticipation must be proved by clear and convincing evidence."  35 U.S.C. § 282; *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1052 (Fed. Cir. 1994).   However, "'[t]he presumption [of validity] is one of law, not fact, and does not constitute 'evidence' to be weighed against the challenger's evidence.'" *Chiron Cop v. Genentech*, 363 F.3d 1247, 1258-59 (Fed. Cir. 2004).  When the prior art at issue was not considered by the Patent Office during prosecution, then it is easier for the moving party to overcome the presumption of validity.  *Alco Standard Corp. v. Tennessee Valley Auth.*, 808

F.2d 1490, 1497 (Fed. Cir. 1986); *American Hoist and Derrick Co. v. Sowa & Sons, Inc.*, 725

F.2d 1350, 1360 (Fed. Cir. 1984).

### 2.      *There is a Dispute as to a Material Fact of Anticipation*

As an example of the subject matter at issue in this patent, claim 1 of the '477 claims:

A lighting device to produce a light of varying colour,[1] said device including:

a body including a spike;

a lens mounted on the body and generally enclosing a chamber having an upper rim surrounding a top opening, and a bottom region;

a cap assembly including a securing means to releasably engage the rim so that cap assembly can be selectively removed from the lens; assembly including;

a base; and

a circuit having at least two lamps of different colours to produce a desired colour *including a varying colour*, the lamps being mounted to direct light into said chamber, connections for at least one rechargeable battery to power the circuit and a solar cell mounted on the surface of the assembly so as to be exposed to light and operatively associated with the connections to charge the battery, and a switch operated to control delivery of electric power from the battery to operate said circuit, the switch being exposed to provide for access thereto by a user.

('477 patent, Certificate of Correction) (emphasis added).

IDC argues that claims 1-9, 13-16, 20-22 and 26 of the '477 patent and claims 27, 32 and

35 of the '827 patent are anticipated by IDC's  Four Season Solar Lights, which were on sale

more than one year prior to the application date.   (Pl's. Br. at 9-21); *See* 35 U.S.C. § 102(b).

While IDC concedes that Defendants' expert, Dr. Ducharme, found that those models could not

produce a "varying colour" as required by the all of claims at issue, it argues that this does not

create a material fact because he examined only the diagrams of those models and did not

---

[1] The patent at various points uses "colour," the British spelling of the American word "color"; at other points it uses the American spelling.  The Court treats them interchangeably because neither party has disputed that they have the same meaning.

examine the behavior of the models themselves.   (Pls.' Rep. Br. at 4-7; Ducharme Decl. ¶¶ 28,

34, 19-34).    The Court disagrees – this is a classic example of a dispute of material fact where

credibility is at issue.

IDC's point is essentially that its expert, Dr. Laurent, is more believable than Dr.

Ducharme.  IDC supports this by showing that its expert examined the electrical diagrams of its

Four Seasons models as well as their actual operation, and concluded that it produced a varying

color, as reflected in the following intensity diagram of intensity of the red and blue LEDs in

these models:



(Laurent Reply Decl. at ¶¶8, 9).  Defendants' expert did not observe the actual Four Seasons

product despite IDC offering him such an opportunity.   IDC's expert determined that as a result,

he missed an important portion of the electrical schematic that allows the product to have more than one intensity in order to mix colors. (*Id.* at ¶7).

However, while this fact affects his credibility, Dr. Ducharme's methods are not improper. Indeed, IDC makes no *Daubert* challenge to his report. It is perfectly reasonable to believe that an expert may determine the way an electrical device works from its electrical schematic; indeed, electrical engineers devised the system of schematics because they were able to impart the electrical reality of a circuit system. It is a jury's role to determine whether the failure to inspect the device should lead them to conclude that Dr. Ducharme made an error in his report and, as a result, should not be credited.

Further, the Court notes that it is skeptical of the graph reproduced above. Plaintiffs state that they have removed the time units because the Court's construction does not make them relevant. (Pls.' Rep. Br. at 7). However, if those units are very small, such as nanoseconds, the intensity change will look to a viewer as "blinking" a not changing to a varying color "over time." While it is the jury's role to apply the Court's construction to the prior art to determine whether every element of the claims appears there, it would be a somewhat strained conclusion for the jury to find that "a color that changes *over time* by varying the *intensity* of one or more lamps *with time*" to apply to something that, in the normal human perception looks like binary blinking.[2] The "varying color" was intended to be observed by humans – if they cannot perceive its variance or the change in *intensity* over time, then the purpose of the invention would be frustrated.

---

[2] The Court notes that the normal scope of time and the non-blinking nature of the term was not disputed in the Markman hearing as Plaintiff's counsel conceded that "Varying means varying. It doesn't [mean] instantaneously on, off, or binary." (Markman Tr. at 23).

###### 3.    *Obviousness Standard*

IDC contends that claims in the '827 patent, claims 28-31, 33, and 34, are obvious based on the combination of the Four Seasons lamps in view of the Piepgras patent publication.    The Patent Act provides that:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains[.]

35 U.S.C. § 103(a); *Graham v. John Deere Co.*, 383 U.S. 1, 13-14 (1966).  Obviousness is a question of law with underlying fact issues.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427, 127 S.Ct. 1727, 7 L. Ed. 2d 705 (2007); *Dennison Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 811, 106 S. Ct. 1578, 89 L.Ed.2d 817 (1986).  "What a particular reference discloses is a question of fact, as is the question of whether there was a reason to combine certain references." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1303 (Fed. Cir. 2010) (internal citation omitted).  Under the four part test for obviousness detailed in *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), a court must consider:

   (1) the scope and content of the prior art;

   (2) the differences between the prior art and the claimed invention;

   (3) the level of ordinary skill in the art; and

   (4) any objective evidence of nonobviousness, such as skepticism of those in the art, long-felt industry need, commercial success, and copying.

*See Agrizap, Inc. v. Woodstream Corp.*, 520 F.3d 1337, 1344 (Fed. Cir. 2008).  All of these are questions of fact that underlie the question of obviousness.

Questions of fact on any of these issues may prevent summary judgment on obviousness. For example, in *Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, the Federal Circuit found that the case was inappropriate to dispose of on summary judgment despite the fact that all elements of the claimed invention were contained in the prior art.  The invention at issue was an intervertebral implant, whose only difference from a prior patent was the use of a single anchor attached it to the adjacent vertebrae.  620 F.3d 1305, 1312 (Fed. Cir. 2010).   That reference could be combined with several other intervertbral implants that disclosed a single anchor.  *Id.* at 1311-12.  However, the Federal Circuit found that there was a material fact as to whether combining the references would have been obvious – the inventor testified, and documents supported, that guidance in the art taught using a single anchor put strain on the weakest part of the vertebrae.  *Id.* at 1312.  Thus, because a reasonable jury could have found that rather than suggest combining the references, the art taught away from the combination, the Federal Circuit determined that summary judgment would have been inappropriate.  *Id.*

Similarly, even if there is an *express* suggestion in the art to combine the references, if there is evidence of industry praise of the invention, industry skepticism of the combination, and commercial success, that evidence prevents summary judgment.   In *Transocean v. Maersk Contractors*, a case involving drilling rigs, patents for prior drilling rigs disclosed all of the elements of the patent and one of the references even a suggested the combination of those elements.  617 F.3d 1296, 1303-04 (Fed. Cir. 2011).  However, the Federal Circuit found that because there was evidence of these secondary considerations, if all factual disputes were resolved in favor of Transocean, there was a strong basis for rebutting the *prima facie* case.  *Id.* at 1305 ("Viewing the objective evidence of nonobviousness in a light most favorable to Transocean, we cannot hold that the claims would have been obvious as a matter of law.").

9

*4.      There is a Dispute of Material Fact as to Obviousness*

IDC contends that claims in the '827 patent, claims 28-31, 33, and 34 are obvious based on the combination of the Four Seasons lamps in view of the Piepgras patent publication.   Both parties agree that the Piepgras patent publication discloses varying the intensity of one or more lamps with time to produce a continuous color changing cycle.  (Piepgras, PCT Publication No. WO 203/026358 ("Piepgras"); Defs.' Br. at 19).   Both parties agree that Piepgras is relevant prior art and that, and that, when combined with the prior art IDC models, shows all aspects of the invention.

This case is similar to both *Transocean* and *Spine Solutions* in that all elements of the invention are contained in the prior art.   Further, Piepgras does contain two suggestions that, when themselves combined would yield the invention.  First, Piepgras contains a suggestion for combining its teachings with garden lamps; second, it contains a suggestion for combining its teachings with solar power; however, it does not suggest combining its teachings with solar-powered garden lamps.   (Piepgras at p. 18, ll. 13-29,  p.47, ll. 21-24).   This does create a *prima facie* case, but it is not as strong as in Transocean because Piepgras do not suggest the full combination; rather, two suggestions would have to be read together to arrive at the combination. Further, despite this less than solid *prima facie* case, there is a dispute of material fact about whether the art taught away from such a combination, whether success was suggested by the prior art, and whether the commercial success of the claimed invention suggests nonobviousness.

The Declaration of Dr. Ducharme states that the complex microprocessor and memory system in Piepgras had never been used in solar powered garden lights.  (Ducharme Decl. ¶55). He suggests that one reason that other inventors had never combined Piepgras with solar

10

powered garden lights is that the complex microprocessor contained in Piepgras had increased

power consumption that a small on-board solar cell may not have been able to meet.  (Ducharme

Dec. at ¶¶50-52, 45, 47, 55, 93).   Essentially, knowledge in the prior art taught away from the

invention and suggested that the combination would not be successful.

        The sections of Piepgras do not contradict his statements, they state:

        As will be appreciated from the foregoing examples, an LED system such as
        that described . . . may be adapted to a variety of lighting applications . . .
        including . . . [a] lantern . . ., or camp light.  The system may have applications
        to architectural lighting, including . . . outdoor walkway lighting, [and] patio
        lighting.

(Piepgras '358 Publication at p. 18, ll. 13-29).  In a separate section, Piepgras states:

        In an embodiment, the lighting device **5000** may include a power adapter **208**
        to connect the lighting device **5000** to a power source such as that found on a
        bicycle or other system for generating power (e.g. *solar*, generation through
        the Seebeck effect, wind, etc.).

(Piepgras at p.47, ll. 21-24) (emphasis added).   The first passage suggests camp lights and

lanterns, but does not suggest solar power and a reasonable jury could find that it contemplated

only "plugged in" power for these camp lights.  The second passage does suggest solar power,

but does not seem to suggest the type of small on-board solar power that is at issue in this patent.

Rather, it may suggest attaching the Piepgras innovation to a larger solar generation system using

a *power adapter*.  Thus, a reasonable jury could find that these do not contemplate the exact

combination of the invention and there is evidence that a reasonable jury could use to determine

that art taught away from the combination.  A jury should evaluate the credibility of that

evidence.

        Further, there is evidence of the commercial success of the product:  IDC's allegedly

infringing products have enjoyed substantial success, and the Ducharme Declaration states that

such success cannot be wholly attributed to the prior art product, which has been dropped by IDC, or other non-invention related factors.  (*See* Ducharme Decl. ¶¶85-89).[3]

Thus, like in *Transocean*, there is a *prima facie* case of obviousness, but if the jury were to credit the testimony of Dr. Ducharme, the secondary factors may be strong enough to rebut the *prima facie* case.  Further, the Court notes that the parties have a substantial dispute over the level of ordinary skill in the art.  Consequently, there is a dispute as to a material fact for obviousness of the patented invention and summary judgment would be inappropriate.

## III.    CONCLUSION

The Court determines that because there is a dispute as to material facts for both anticipation and obviousness of the disputed claims, summary judgment for invalidity is inappropriate.


Dated: February 7, 2011


                                              /s/ Garrett E. Brown, Jr.
                                     GARRETT E. BROWN, JR., U.S.D.J.

---

[3] The Court does not rely on the Richmond Declaration's statement of industry skepticism.  (Richmond Dec. ¶ 17). Richmond has no knowledge or basis to conclude what the reason was for the manufacturer's rejection, and the manufacturer's stated basis had nothing to do with skepticism that the invention could work.